Garland KITCHEN, et al.,

v.

ARISTECH CHEMICAL, et al.

No. C–1–90–102.

United States District Court,
S.D. Ohio, W.D.

Aug. 2, 1991.

Gary Douglas Greenwald, Schrim & Greenwald, Columbus, Ohio, William P. Murray, Murray & Murray Co., L.P.A., Sandusky, Ohio, for plaintiffs.

John Jeffrey McNealey, Porter, Wright, Morris & Arthur, Columbus, Ohio, Gerald Joseph Rapien, Taft, Stettinius & Hollister, Cincinnati, Ohio, for defendants.

Dennis Joseph McCann, Battelle Memorial Institute—2, Columbus, Ohio, for movant.

## ORDER

HERMAN J. WEBER, District Judge.

Plaintiffs, residents of Ohio and Kentucky who live near a chemical manufacturing plant in Haverville, Ohio, (the Haverville Plant), bring this diversity action based on six theories of liability: negligence, nuisance, trespass, fraud, strict liability, and intentional infliction of injury. (Doc. 1). Plaintiffs allege that defendants are responsible for injuries to plaintiffs' persons and properties as a result of the migration of toxic chemicals from the Haverville Plant. Defendants are Aristech Chemical (Aristech), owner and operator of the Haverville Plant, and USX Corporation, Aristech's parent corporation. *Id.* This matter is before the court on defendants' motion for disqualification of plaintiffs' counsel and its motion to strike George Chada's affidavits, plaintiffs' response, defendants' in camera submission of documents, the parties' proposed findings of fact and conclusions of law, and the parties' oral arguments. (Docs. 44, 52, 57, 62, 63, 65, 70).

## FACTUAL BACKGROUND

The focus of defendants' motion to disqualify plaintiffs' counsel concerns the communications between plaintiffs' counsel and George Chada a former employee of Aristech.

From June 5, 1989, until approximately November 1990, Aristech employed Chada as a Senior Environmental Systems Consultant. Prior to beginning work with Aristech, Chada signed a document acknowledging that he would have access to confidential information and agreeing not to reveal that information. The document also required Chada to return all documents and copies of documents when he left Aristech's employ.

As a Senior Environmental Systems Consultant Chada provided advice on environmental matters to a team of attorneys, technical consultants, and Aristech employees, known as the Rose Run team. The team was formed in response to allegations that toxic chemicals had migrated from storage wells at the Haverville Plant. Beginning in December 1989 the Rose Run team met frequently concerning Aristech's actual and anticipated involvement in litigation arising from the allegations of toxic chemical migration.

Chada's allegedly extensive knowledge of Aristech's activities regarding the subject matter of the instant action is based largely upon his relationships with members of the Rose Run Team. Chada provided technical data to two attorneys. One attorney, Barton Day, consulted Chada when preparing a "U.I.C. petition."[1] The other attorney, Roger McNealy, represented Aristech during an appeal to the Ohio Environmental Board of Review.[2] Chada had extended meetings and conversations with McNealy involving Aristech's legal strategies in a dispute over the operation of the storage wells at the Haverville Plant. Chada denies having knowledge of any confidential work product of these attorneys.

In July 1989 Chada testified as a technical expert on behalf of Aristech before the Ohio Environmental Board of Review on the issue of whether Aristech should be permitted to continue to drill at a particular storage well at the Haverville Plant.

In the fall of 1990 Chada telephoned one of plaintiffs' attorneys, Gary Greenwald. Chada identified himself to Greenwald as an Aristech employee who worked on the Rose Run project and offered plaintiffs the opportunity to hire him as an environmental consultant in connection with the instant litigation.

Greenwald did not accept Chada's offer to consult. He told Chada that plaintiffs

---

1. Aristech filed its U.I.C. petition in an attempt to obtain permission from the United States Environmental Protection Agency to continue its use of certain storage wells at the Haverville Plant.

2. Aristech pursued this appeal in an effort to obtain relief from an order issued by the director of the Ohio Environmental Protection Agency (OEPA). The OEPA order required Aristech to cease storing chemicals in a particular well at the Haverville Plant. Aristech and the OEPA settled this matter on July 28, 1989.

might be interested in retaining him but that discussions could not continue until after Chada resigned as an employee of Aristech.

In November 1990 Chada again telephoned Greenwald and informed Greenwald that he no longer worked for Aristech. Chada told Greenwald that he had retained an attorney and that he wished to discuss entering into a consulting arrangement with plaintiffs.

On December 20, 1990, Chada and his counsel met with Greenwald and a co-counsel to negotiate a consulting agreement. At this meeting Chada discussed his employment with Aristech and the allegedly adverse environmental impact of the chemical disposal systems at the Haverville Plant. This was the first occasion that Greenwald discussed these matters with Chada. At this meeting Chada allegedly revealed that he possessed many documents relating to Aristech environmental matters. Chada informed Greenwald that he had prepared and maintained these documents during his employment with Aristech. Greenwald requested that Chada provide the documents to him for inspection and review. Chada refused. Instead, he requested that Greenwald obtain the documents through the discovery process. Chada suggested that if such documents were destroyed or concealed, he would permit plaintiffs to see his copies.

Chada also indicated that he had no further business contacts of any kind with Aristech employees. He told Greenwald that he was not interested in talking to him merely to help plaintiffs secure money damages in this litigation. Rather, he allegedly sought assurances from Greenwald that efforts would be made to stop Aristech from using particular storage wells at the Haverville Plant.

Greenwald did not advise defendants or defendants' counsel of his communications with Chada and did not obtain defendants' consent for the communications to be held in their absence.

## CONCLUSIONS OF LAW

Defendants seek an order disqualifying plaintiffs' counsel due to counsel's alleg-

edly unethical conduct in communicating with Chada. Defendants argue that since Chada had intimate access to the work product, strategies, and privileged communications of Aristech's attorneys and consultants on the subject matter of the instant action, Chada is a party within the meaning of the Model Code of Professional Responsibility, DR 7–104(A)(1), and consequently plaintiffs' counsel may only contact him ex parte if Aristech consents. Defendants contend that since Aristech's counsel neither consented nor knew about plaintiffs' contacts with Chada until early February 1991, the contacts in November and December 1990 were ex parte and therefore violated both DR 7–104.

Defendants further argue that since Chada's communications with Aristech's attorneys involved privileged matters and work product, the disclosure of this information "can only have the effect of tainting this trial and skewing the adversary process sharply in favor of plaintiffs." (Doc. 44, p. 14). Defendants contend, "Aristech has been and will continue to be deprived of the protection of the attorney-client privilege and work product immunity that are intended to insure that Aristech can consult with its attorneys and consultants without fear of later disclosure of those matters to adversaries." *Id.*

■ A district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it. A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention. *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742 (5th Cir.1980).

■ The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex Parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (Marshall, C.J.). However, the ability to deny one's opponent the services of his chosen counsel is a potent weapon. *Manning v.*

*Waring, Cox, James, Sklar & Allen,* 849 F.2d 222, 224 (6th Cir.1988). Confronted with such a motion, courts, must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of his choice. In order to resolve competing interests, the court must balance the interest of the public in safeguarding the judicial process together with the interests of each party. *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 711 (6th Cir.1982). "Motions for attorney disqualification 'should be viewed with extreme caution for they can be misused as a technique of harassment.' " *Panduit Corp. v. All States Plastic Mfg. Co.,* 744 F.2d 1564, 1577 (Fed.Cir.1984) (quoting *Freeman v. Chicago Musical Instrument Co.,* 689 F.2d 715, 721 (7th Cir.1982)), *disapproved on other grounds by Richardson–Merrell, Inc. v. Koller,* 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985).

While the Sixth Circuit has approved disqualification of attorneys, it appears to have done so only in cases where a conflict of interest existed. *See, e.g., Dana Corp. v. Blue Cross & Blue Shield Mutual,* 900 F.2d 882 (6th Cir.1990); *Manning,* 849 F.2d 222; *Gordon v. Norman,* 788 F.2d 1194 (6th Cir.1986); *General Mill Supply Co.,* 697 F.2d 704; *General Electric Co. v. Valeron Corp.,* 608 F.2d 265 (6th Cir.1979), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980); *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290 (6th Cir.1979).

Other circuits have approved dismissal of an attorney for pursuing frivolous theories, *e.g., United States v. Masat,* 896 F.2d 88, 92 (5th Cir.1990); for violation of the rules of professional conduct which resulted in an "erosion of public confidence in the integrity of the bar and of the legal system," *United States v. Hobson,* 672 F.2d 825, 829 (11th Cir.), *cert. denied,* 459 U.S. 906, 103 S.Ct. 208, 74 L.Ed.2d 166 (1982); or for misconduct in open court that substantially impeded the orderly administration of justice, *e.g., United States v. Collins,* 920 F.2d 619, 627 (10th Cir.1990); *see also United States v. Dinitz,* 538 F.2d 1214, 1220–21 (5th Cir.1976), *cert. denied,* 429

U.S. 1104, 97 S.Ct. 1133, 51 L.Ed.2d 556 (1977).

The Third and Ninth Circuits have permitted disqualification based on the appearance of impropriety. *See, e.g., In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355 (9th Cir), *cert. denied subnom. California v. Standard Oil Co of California,* 455 U.S. 990, 102 S.Ct. 1615, 71 L.Ed.2d 850 (1982); *Richardson v. Hamilton International Corp.,* 469 F.2d 1382 (3d Cir.1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973). In such cases, however, the disqualification was based on the appearance and probability of a conflict of interest.

The Second, Eleventh, and Federal Circuits have held that the appearance of impropriety is not ground for disqualification. *See, e.g., Waters v. Kemp,* 845 F.2d 260 (11th Cir.1988). It is considered "simply to slender a reed on which to rest a disqualification order except in the rarest cases." *Board of Educ. v. Nyquist,* 590 F.2d 1241, 1247 (2d Cir.1979). Disqualification is therefore ordered in two situations, neither of which applies to the instant case: 1) where an attorney's conflict of interest undermines the court's confidence in the vigor of an attorney's representation; or 2) where an attorney is at least potentially in a position to use privileged information concerning the opponent gained through prior representation, thus giving his present client an unfair advantage. *Telectronics Proprietary, Ltd. v. Medtronics, Inc.,* 836 F.2d 1332 (Fed.Cir.1988); *Nyquist,* 590 F.2d at 1246.

■ Acts that appear to violate the Code of Professional responsibility do not confer upon the trial court the unfettered discretion to disqualify. An attorney should be disqualified "only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.1979) (quoting *Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir.1976)).

■ The ethical standards by which federal courts measure an attorney's professional conduct are standards defined by federal law. *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985). Southern District of Ohio Rule 2.6 provides that supervision of attorney conduct in the federal district courts of the Southern District of Ohio is governed by the Model Federal Rules of Disciplinary Enforcement. Model Federal Rule IV, in turn, adopts the Code of Professional Responsibility for the highest state court in which the district court sits. Analysis of counsel's conduct in the instant case, therefore, begins with the standards established by the Ohio Code of Professional Responsibility. Since questions of ethics in federal cases are ultimately questions of federal law, the Court is guided by federal case law, as well as the American Bar Associations comments to its Model Rules of Professional Conduct and the policies underlying the particular ethical rule at issue. *See id.; see also Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990).

■ The ethical rule plaintiffs' counsel Greenwald allegedly violated provides:

A. During the course of his representation of a client a lawyer shall not:

1. Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

Ohio Code of Professional Responsibility DR 7–104.

Greenwald's conduct when Chada first telephoned him was ethical. Greenwald not only refused to speak with Chada because Chada was, at that time, an Aristech employee, he also declined Chada's offer to act as a consultant on the instant litigation. Although Greenwald told Chada that plaintiffs might be interested in retaining him, he informed Chada that discussions could not continue until after Chada resigned as an employee of Aristech.

Whether Greenwald's communication with Chada on December 20, 1990, violated

DR 7–104 is a closer question. Defendants correctly argue that *Public Service Electric and Gas Co. v. Associated Electric and Gas Insurance Services, Ltd.*, 745 F.Supp. 1037 (D.N.J.1990), supports their contention that former employees of a party-corporation should not be contacted ex parte by opposing counsel. 745 F.Supp. at 1042. Resolution of the issue of whether Greenwald violated DR 7–104 by communicating with Chada is unnecessary, because assuming *arguendo* that Greenwald violated this ethical rule, his conduct was not so egregious that it warrants the extreme sanction of disqualification—particularly in view of Chada's testimony already given before the Ohio EPA, and thus placed in the public domain, as well as the presence of Chada's personal counsel at the December meeting with Greenwald. A violation of the rules of professional ethics does not automatically necessitate disqualification of the attorney involved. *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir.1976); *see also Meat Price Investigators Ass'n. v. Spencer Foods*, 572 F.2d 163, 165 (8th Cir. 1978). When determining whether an attorney should be disqualified due to a violation of DR 7–104, three competing interests must be considered: "1) the client's interest in being represented by counsel of its own choice; 2) the opposing party's interest in a trial free from prejudice due to disclosures of confidential information; and 3) the public's interest in the scrupulous administration of justice." *Meat Price Investigators Ass'n.*, 572 F.2d at 165.

Defendants have not established that under the circumstances of this case, either their interest in a trial free from prejudice or the public's interest in the scrupulous administration of justice override plaintiffs' interest in being represented by counsel of their choice. *See id.* It is true that Chada's position as an environmental consultant involved sensitive work with Aristech attorneys and officials. Defendants, however, have not argued how or why their interest in a trial free from prejudicial disclosure of confidential information requires the disqualification of plaintiffs' counsel of choice. Defendants have neither demonstrated nor argued why the normal protec-

tions available under the Federal Rules of Civil Procedure and the Federal Rules of Evidence will not suffice to prevent such information from being proferred or admitted at trial. Moreover, defendants remain free to gather information from Chada and from other sources, through formal discovery methods, with which they can test his credibility and the validity of his opinions. Given the availability of these protections, defendants have not shown that Greenwald's conduct has so prejudiced their case that his disqualification is required. *See Meat Price Investigators Ass'n.*, 572 F.2d at 165.

Defendants argue that Chada violated his confidentiality agreement when he contacted Greenwald. Although this may be true, this violation does not support defendants' contention that Greenwald should be disqualified, since Chada's alleged violation has no relationship with the three competing interests, *see id.*, applicable to the analysis of defendants' motion to disqualify.

It is therefore ORDERED that defendants' motion to disqualify counsel and motion to Strike Chada's affidavit are DENIED.

IT IS SO ORDERED.