# UNITED STATES of America, Plaintiff,

v.

# BEIERSDORF–JOBST, INC., Defendant.

### No. 3:96CV7377.

United States District Court,
N.D. Ohio,
Western Division.

Sept. 26, 1997.

---

Joyce R. Branda, Michael F. Hertz, Dept. of Justice, Civil Div., Washington, DC, for Plaintiff.

Kevin E. Joyce, William M. Connelly, Sarah Steele Riordon, Connelly, Soutar & Jackson, Toledo, OH, for Defendant.

Order

CARR, District Judge.

This is an action under the False Claims Act in which plaintiff alleges that defendant falsely represented its home model lymphedema pumps in order to market them as fully reimbursable by the United States Department of Health and Human Services.

On May 8, 1997, defendant filed a motion for a protective order concerning ex parte interviews of its former employees. (Doc. 15). Plaintiff filed an opposition to this motion on May 22, 1997, (Doc. 16), and a supplemental opposition on August 6, 1997. (Doc. 21).[1] Defendant's motion shall be denied.

## Background

Defendant Beiersdorf–Jobst, Inc., (Jobst) is an Ohio corporation which manufactures, among other things, lymphedema heart pumps for home use. Under the Medicare program of the United States Department of Health and Human Services, patients are reimbursed for purchase of certain medically necessary devices, including certain lymphedema pumps. The amount of reimbursement varies depending on the category in which the pump is listed.

Plaintiff United States of America claims that Jobst misrepresented the capabilities of its Extremity Pump System 7500 (the 7500 Pump) in order to obtain inflated reimbursement for the pump. Specifically, the government alleges that Jobst's officers and employees marketed the 7500 Pump as reimbursable under code E0652, which covers pumps with calibrated gradient pressure, even though they knew that the 7500 Pump did not provide calibrated gradient pressure.

Jobst now seeks a protective order that would require the government to notify and obtain approval from Jobst before interviewing any of its former employees, maintain a list of all former employees contacted and any statements and notes related to that interview, and make that list available to Jobst. Because I find no reason to limit the government's legitimate discovery efforts so drastically, I deny defendant's motion.

## Discussion

■ Federal law controls the ethical standards of attorneys appearing in federal court. *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 258 (S.D.Ohio 1991) (citing *In re Snyder*, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504 (1985)). Pursuant to Local Rule 1:5.1(b), attorneys practicing in this Court are bound by the ethical standards of the Ohio Code of Professional Responsibility (the Ohio Code) insofar as those standards are consistent with federal law. In construing the scope of ethics rules under the Ohio Code, "it is appropriate to refer to the policies that underlie [the rule], to state and federal cases construing it, and to the analogous Model Rule [of Professional Responsibility]...." *Polycast Technology Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 625 (S.D.N.Y.1990).

DR 7–104(A)(1) of the Ohio Code provides that:

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of a lawyer representing such other party or is authorized by law to do so.[2]

■ The purpose of the bar against communication with represented parties is "to safeguard a party's right to counsel by preventing an opposing party from obtaining uncounseled admissions from a represented party." *Insituform of North America, Inc. v. Midwest Pipeliners, Inc.*, 139 F.R.D. 622, 625 (S.D.Ohio 1991). *See also Polycast*, 129 F.R.D. at 625 (policies underlying proscription against communications with adverse represented party include preventing "unprincipled attorneys from exploiting the disparity in legal skills between attorneys and lay people" and "preserv[ing] the integrity of the attorney-client relationship") (citations omitted).

■ Ethical standards protect both individual parties and corporations. Thus, DR 7–104(A)(1) protects a represented corpora-

---

1. Although defendant's motion has been decisional since May 22, 1997, it was not brought to the Court's attention until plaintiff's filing of its supplemental opposition.

2. Model Rule 4.2, the counterpart to DR 7–104(A)(1) under the Model Rules of Professional Conduct, is similar:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyers or is authorized by law to do so.

tion's right to counsel just as surely as it protects that of an individual party. Determining which employees of a corporation constitute "parties" under, and therefore fall within the ambit of, DR 7–104(A)(1) has given courts some pause.

■ Under Fed.R.Evid. 801(d)(2)(D), "statement[s] by [a] party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship" are non-hearsay statements admissible against the party. Thus, DR 7–104(A)(1) forbids *ex parte* contacts with current employees of a represented corporation if their admissions would constitute admissions of that corporation under the Fed.R.Evid. 801(d)(2)(D). *See, e.g., Insituform,* 139 F.R.D. at 625. *See also* Sup.Ct. of Ohio Bd. of Comm'rs on Grievances and Discipline, Opinion 20 (1990) (disallowing uncounseled interviews of current employees who are in management positions, who can speak for the corporation, or whose acts may be imputed to the corporation).

■ Jobst's request for a protective order essentially asks this Court to find that its right to counsel will be infringed if the government is allowed to contact *former* Jobst employees *ex parte*. Jobst argues that statements of its former employees may be admissible against it as party admissions, and that this Court should therefore order the government to notify Jobst and gain its approval before conducting interviews of any former employees.

The application of DR 7–104(A)(1) to contacts with former employees has given courts much pause. Several courts, both state and federal, have struggled with the question of whether DR 7–104(A)(1), or its Model Rules counterpart, Rule 4.2, forbid one-sided communications with ex-employees of a represented corporation.

Some courts have placed restrictions on interviews of former employees. *See, e.g., Public Serv. Elec. and Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F.Supp. 1037 (D.N.J.1990); *Curley v. Cumberland Farms, Inc.,* 134 F.R.D. 77 (D.N.J.1991); *PPG Indus., Inc. v. BASF Corp.,* 134 F.R.D. 118 (W.D.Pa.1990). The majority of jurisdictions, however, allow attorneys to contact former employees without notification of or approval by the former employer. *See, e.g., Aiken v. Business and Indus. Health Group,* 885 F.Supp. 1474 (D.Kan.1995); *Hanntz v. Shiley, Inc.,* 766 F.Supp. 258, 265 (D.N.J. 1991); *Valassis v. Samelson,* 143 F.R.D. 118 (E.D.Mich.1992); *In re Domestic Air Transp. Antitrust Litig.,* 141 F.R.D. 556 (N.D.Ga.1992); *Shearson Lehman Bros., Inc. v. Wasatch Bank,* 139 F.R.D. 412 (D.C.Utah 1991); *Polycast,* 129 F.R.D. 621; *Dubois v. Gradco Sys., Inc.,* 136 F.R.D. 341 (D.Conn. 1991); *Reynoso v. Greynolds Park Manor, Inc.,* 659 So.2d 1156 (Fla.App.1995); *Fulton v. Lane,* 829 P.2d 959 (Okla.1992). Indeed, since the promulgation of Formal Opinion 359 by the American Bar Association Committee on Ethics and Professional Responsibility in March, 1991, discussed below, the trend among courts has been to permit *ex parte* communications with former employees about litigation involving their former employer.

My research has uncovered no Ohio state court decisions, reported or unreported, discussing the application of DR 7–104 to communications with former employees of an opposing corporation. However, three Ohio federal court cases, all from the Southern District and applying Ohio's Code of Professional Responsibility, touch upon the propriety of contacting former employees *ex parte.*

In an unreported decision, a court denied the defendant's motion for a protective order that would have prevented opposing attorneys from contacting defendant's former managers. *Ruel v. Mac Tools, Inc.,* No. C2–93–0198 (S.D.Ohio 1993) (Order on Defendant's Motion for Protective Order). A second case, also unreported, comes to a similar conclusion. *Summers v. Rockwell Int'l Corp.,* No. C2–02–301, slip op. at 6 (S.D.Ohio April 9, 1993). In *Summers,* the magistrate judge rejected the defendant's request for a "bright-line" approach that would prohibit *ex parte* contacts with all former employees. Choosing a case-by-case approach, the judge found that DR 7–104(A)(1) permitted plaintiff's attorney to interview former employees only upon written notice to and consent of the former employees. Finally, in *Kitchen, supra,* the court, denying a request to disqualify an attorney who had communicated with a former employee, assumed arguendo

that such communication would be barred by DR 7–104(A)(1). 769 F.Supp. at 258.

The strongest support for unfettered communication with former employees under Ohio ethics rules comes from no less an authority than the Supreme Court of Ohio's Board of Commissioners on Grievances and Discipline (Board). In a recent opinion, the Board concluded that DR 7–104 does not prohibit *ex parte* contacts with former employees of an adverse corporation. Sup.Ct. of Ohio Bd. of Comm'rs on Grievances and Discipline, Op. 1 (1996).

The Board had previously suggested that interviews of certain former employees might require permission of the employer's counsel. Sup.Ct. of Ohio Bd. of Comm'rs on Grievances and Discipline, Op. 20 (1990). Specifically, the Board had intimated that former employees who were privy to privileged communications about the case or whose conduct gave rise to the action might be considered "parties" under DR 7–104(A)(1) and thus could not be interviewed *ex parte*. *Id.*

Opinion 96–1 specifically overruled the prior suggestion that DR 7–104 applies to ex-employees. The Board noted that most other state bar associations and ethics committees have permitted *ex parte* contact with former employees "so long as the former employee is not represented in the matter by counsel and the attorney does not inquire into matters that may be privileged." Sup. Ct. of Ohio Bd. of Comm'rs on Grievances and Discipline, Op. 1 (1996). Adopting this view, the Board stated:

> In construing DR 7–104(A), this Board's view is that notification and consent of corporate counsel is not required prior to interviewing a former employee of a corporation. A former employee is no longer part of the corporation and no longer speaks for the corporation. A former employee may have interests that differ from the corporation. A former employee may have obtained his or her own counsel in the matter and may have chosen to represent himself or herself. For these reasons, a former employee of a corporation is not considered a party for purposes of the rule.

*Id.*

The American Bar Association Committee on Ethics and Professional Responsibility (Committee), in Formal Opinion 91–359, similarly concluded that the bar against communications with unrepresented parties does not cover *ex parte* communications with former employees.[3] The Committee recognized that several courts had prohibited uncounseled interviews of certain former employees under Rule 4.2. However, the Committee declined to follow the reasoning of those courts:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employees, the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage as to former employees by means of a liberal interpretation.

Formal Op. 359 (1991).[4]

My review of case law and opinions from both the state and national ethics committees convinces me that the proscription against communications with represented parties does not extend to former employees of a represented corporation. Nothing in the text of DR 7–104(A)(1) indicates that it was meant to forbid *ex parte* communications with ex-employees. Moreover, the un-

---

3. In a more recent opinion, the Committee reaffirmed its position that Rule 4.2 does not forbid *ex parte* contacts with former employees. ABA Comm. on Ethics and Prof. Resp., Formal Op. 396 (1995). Perhaps even more importantly, the Standing Committee found that the change in the Rule from "party" to "person" had no effect on the Rule's application to former employees of a corporation. *Id.*

4. The Committee's opinions has been very influential: in *Valassis,* the court noted that in the sixteen-month period since Formal Op. 359 had been issued, every court deciding the issue followed the ABA's adoption of the majority position. 143 F.R.D. at 121 n. 2.

derlying rationale behind the rule, *i.e.*, maintaining the integrity of the attorney-client relationship, is not undermined by allowing uncounseled interviews with former employees who have no existing relationship with, and therefore cannot bind, a represented corporation.

Furthermore, policy considerations militate against restricting communications with former employees. A basic cornerstone of our judicial system is the unimpeded flow of information between adversaries to encourage the early detection and elimination of both undisputed and meritless claims. Requiring the approval and the presence of corporate counsel would have the inevitable effect of chilling the exchange of information, because former employees would most likely be hesitant about speaking freely in the presence of their former employer's attorney. *See Polycast*, 129 F.R.D. at 627 ("former employees often have emotional or economic ties to their former employer and would sometimes be reluctant to come forward with potentially damaging information if they could only do so in the presence of the corporation's attorney").

█ In addition, the details of Jobst's protective order run counter to the principle underlying the work product doctrine. Under Fed.R.Civ.P. 26(b)(3), materials prepared in anticipation of litigation by a party or a party's representative are undiscoverable by an adversary, absent a showing of substantial need. The purpose behind this work product rule "is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." *United States v. Adlman*, 68 F.3d 1495, 1501 (2d. Cir.1995) (citing *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975)).

Jobst's demand that the government maintain and disclose to it a list of all former employees contacted and all statements and notes resulting from such contacts would clearly invade the government's zone of strategical privacy. Without substantial need, which Jobst has not attempted to demonstrate, such a request cannot be granted.

## Conclusion

After considering the case law construing DR 7–104(A)(1) and its counterpart, Model Rules Rule 4.2, the purposes of these ethical standards, and the policies of modern-day adversarial litigation, I hold that attorneys practicing in the Northern District of Ohio are not barred from *ex parte* communications with former employees of adverse corporations.

In so holding, I recognize that at the heart of Jobst's argument is its concern that statements made by former employees will be admissible against it as party admissions. I have already found that such statements cannot be party admissions if made by an employee who is no longer employed by and has no continuing relationship with Jobst. However, should the government attempt to admit such statements against Jobst as party admissions, Jobst can then move for exclusion of such statements.

Accordingly, it is hereby

**ORDERED THAT** defendant's motion for a protective order (Doc. 15) shall be, and hereby is, denied.

**So ordered.**