Darlene SCHORR, Plaintiff,

v.

BRIARWOOD ESTATES LIMITED PARTNERSHIP, et al., Defendants.

No. 1:97 CV 525.

United States District Court, N.D. Ohio, Eastern Division.

March 30, 1998.

---

Diane E. Citrino, Cleveland, OH, for Plaintiff.

Anthony J. Damelio, Jr., Glen Hunter Garrett, Mark I. Wachter, Cleveland, OH, for Defendant.

### MEMORANDUM AND ORDER

OLIVER, District Judge.

This matter comes before the court on Plaintiff's July 15, 1997, Motion for a Protective Order pursuant to Rule 26(c) which requests that Plaintiff not be required to submit to an oral deposition noticed by Defendants. Specifically, Plaintiff requests that her deposition be taken in written form. Alternatively she requests that if the court determines that her deposition should be taken orally, that it be limited in scope and that Defendants' lead counsel not be allowed to question her.

Defendants oppose Plaintiff's motion on the grounds that the protective order (1) frustrates the goal of an open evaluation of claims which would eliminate surprise and trial by ambush, and (2) frustrates the promotion of an out-of-court resolution of claims. For the reasons set forth herein, Plaintiff's Motion to Limit Scope of Oral Examination (Docket No. 20) is granted in part and denied in part.

### I.  FACTUAL BACKGROUND

Darlene Schorr, Plaintiff ("Plaintiff"), filed this lawsuit on February 28, 1997, alleging discrimination under the Fair Housing Act of 1988, 42 U.S.C. § 3601, et seq. She is a mentally disabled person suffering from post traumatic stress disorder and major depression. She has received benefits from the Social Security Administration, Office of Disability since 1992.

According to Plaintiff's Complaint, she applied for an apartment at Briarwood Estates in January 1995. Briarwood Estates is owned by Defendants Briarwood Estates Limited Partnership ("BELP") and Transcon Builders, Inc. ("Transcon"). The apartment complex is located in Summit County, Ohio and managed by Defendant Owner's Management Company ("Owner's Management"). Defendant Vicky Bookman ("Defendant Bookman"), former employee for Owner's Management, had the responsibility of managing the Briarwood Estates property.

Plaintiff further alleges that, on or about March 1995, she contacted Briarwood Estates to inquire about the status of her application. Defendant Bookman informed Plaintiff that she had been placed on the waiting list. In November 1995, Defendant Bookman sent correspondence to Plaintiff requesting that she contact the Briarwood Estates office. Plaintiff then contacted Defendant Bookman, who informed Plaintiff that she needed to come to Briarwood Estates for a pre-rental interview. Defendant Bookman also informed Plaintiff that she needed to bring a number of documents to the interview. The requested documents included, but were not limited to, the follow-

ing: (1) a copy of Plaintiff's divorce decree and shared parenting agreement; (2) proof of Plaintiff's income from Social Security Disability; and (3) Plaintiff's copy of her children's social security cards. Plaintiff submitted the requested documentation.

Plaintiff maintains that, on or about November 9, 1995, Defendant Bookman interviewed Plaintiff in the community room of Briarwood Estates. During the interview with Defendant Bookman, Plaintiff indicates she was questioned about the nature and causes of her disability. As a result, she discussed an alleged rape to which she attributes the cause of her disabilities. During Plaintiff's pre-rental interview with Defendant Bookman, several people entered into the community room, including a Briarwood Estates tenant and an employee. According to Plaintiff, Defendant Bookman continued the interview process without asking the two individuals to leave. Following the close of the pre-rental interview, Defendant Bookman requested additional written documentation, including a letter from Plaintiff's therapist verifying Plaintiff's mental disability. Plaintiff asserts that she obtained the letter from her therapist. On or about November 15, 1995, Plaintiff contacted Defendant Bookman to find out if she had been approved for an apartment. Defendant Bookman informed Plaintiff that she would be notified soon but did not tell Plaintiff whether she had been approved or rejected.

Plaintiff's Complaint against BELP, Owner's Management, Defendant Bookman, and Transcon alleges discrimination under the Fair Housing Act of 1988, 42 U.S.C. § 3601, et seq. Plaintiff maintains that Defendants discriminated against her in the application process by requesting additional documentation from her therapist, by asking unlawful questions regarding her disability, and in failing to rent an apartment to her on the basis of her disability. She also alleges retaliation for filing a complaint with the Ohio Civil Rights Commission prior to suit.

A status conference occurred on July 7, 1997, where the court determined that, at that time, resolution short of trial would not be possible. The court concluded that discovery should continue and that the parties should file certain motions regarding discovery issues.

Plaintiff's motion for a protective order to limit the scope of oral examination with respect to the taking of her deposition alleges that her mental health is extremely fragile and requests that her deposition be taken in written form. Should the court determine that Plaintiff's oral deposition is necessary, Plaintiff requests, in the alternative, that her deposition be limited.

Plaintiff also requests that Defendants' counsel be removed and replaced with a female attorney or with Defendants' male co-counsel, who is viewed as being more soft spoken. Plaintiff makes this request, in part, based on something which occurred as she waited outside of the Judge's chambers during two pretrial conferences. While sitting in the waiting area, Plaintiff relates that on both occasions she overheard the voice of Defendants' lead counsel coming from the Judge's chambers. According to Plaintiff, hearing his voice caused her distress which resulted in vomiting and stomach pains.

In support of her request to limit the scope of the deposition, Plaintiff has submitted the affidavit of Dr. John Wilson, Ph.D., a therapist who specializes in Post Traumatic Stress Disorder ("PTSD"). On May 30, 1997, the PTSD therapist examined Plaintiff and concluded that she suffers from post traumatic stress disorder resulting from childhood sexual abuse and rape. The PTSD therapist asserts that Plaintiff is in extremely fragile mental health and recommends that, if oral deposition questioning is absolutely necessary, that such questioning and the timing of the deposition be limited. The therapist makes the following specific recommendations: (1) that Defendants not ask questions regarding the underlying causes of Plaintiff's PTSD; (2) that the deposition be limited so as not to exceed one hour in length; (3) that the deposition begin no earlier than 11 a.m.; (4) that the deposition take place in a neutral or familiar environment and that a supportive friend be present to minimize Plaintiff's anxiety; (5) that a female or soft-spoken male attorney with a gentle affect depose Plaintiff; (6) that the questioning about events take place in the same chronological

order of their occurrence; and (7) that noises, movement within the room, and movement outside of the room be minimized to prevent Plaintiff distraction.

In response, Defendants oppose Plaintiff's requests for the following reasons: (1) Defendants will be unfairly prejudiced by limitations on choice of counsel, absent ethical considerations; (2) Defendants will be unfairly prejudiced by any limitations on deposition questions regarding the underlying causes of Plaintiff's PTSD; (3) Defendants will not be able to complete Plaintiff's deposition in one hour; and (4) Defendants, as officers of the court, are already subject to rules of conduct which provide a deponent ample protection from inappropriate behavior. Furthermore, Defendants maintain that they will be unable to evaluate the settlement value of Plaintiff's case and will be extremely prejudiced in preparing a defense.

## II. *LEGAL ANALYSIS*

### A. *Applicable Standard*

Rule 26(c) of the Federal Rules of Civil Procedure states in part:

the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) that the disclosure or discovery not be had;

(2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of time or place;

(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) that certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters;

(5) that discovery be conducted with no one present except persons designated by the court. . . .

Fed.R.Civ.P. 26(c).

### B. *Limitations Sought Regarding Nature and Extent of Discovery*

■ The party seeking a protective order bears the burden of establishing good cause and a specific need for protection. *Landry v. Air Line Pilots Ass'n. Int'l AFL–CIO*, 901 F.2d 404, 435 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). In seeking to prevent or delay a deposition on medical grounds, the moving party has the burden of making a specific and documented factual showing that the deposition will be dangerous to the deponent's health. *Medlin v. Andrew*, 113 F.R.D. 650, 653 (M.D.N.C.1987); *cf. Butler v. Burroughs Wellcome, Inc.*, 920 F.Supp. 90 (E.D.N.C.1996) (plaintiff's cause of action related directly to her PTSD, thus the court did not limit nor prohibit questions relating to the relevant period).

In *Medlin*, the plaintiff requested a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, staying all discovery and, in particular, Plaintiff's deposition. *Id.* Plaintiff submitted a letter from her psychiatrist to the court which stated that, in his opinion, plaintiff could not be deposed without presenting a risk of further mental deterioration, perhaps hospitalization, and should not be deposed for a period of ninety days. *Id.* at 652. The court found that, although plaintiff had met the initial burden of establishing a good cause to receive a brief stay of her deposition, the psychiatrist's conclusory letter failed to provide a specific and documented factual showing that the deposition would be dangerous to her health. *Id.* at 653. Consequently, the court stated that more information would be required in order for plaintiff to obtain a substantial or permanent stay of her deposition. *Id.* The court, however, did grant a temporary protective order for thirty days so that Plaintiff would have the opportunity to come forward with specific evidence from her doctors.

In the instant case, Plaintiff alleges that she will suffer certain psychological injuries if her deposition proceeds as usual. Unlike the plaintiff in *Medlin,* the Plaintiff here substantiates her claim by providing specific documentation from a psychological expert in the field of Post Traumatic Stress Disorder (PTSD). This expert provides the court with specific examples of behavior he observed upon his clinical examination of Plaintiff and asserts that, based on those observations, Plaintiff indeed suffers from PTSD, and that questioning without the requested limitations may affect her mental health. During Plaintiff's examination, the PTSD expert found that Plaintiff experienced intense psychological distress whenever the underlying traumatic events of her disorder were mentioned and that, because of this distress, she would at times lose the focus of their conversation. He also observed that Plaintiff is in extremely fragile mental health and therefore could not tolerate many things that a normal person could. In this expert's opinion, Plaintiff should only be deposed within the recommended limitations, and the deposition questions should not delve into the underlying causes of Plaintiff's PTSD. It is this expert's opinion that, under normal deposition standards, Plaintiff's mental health would be compromised. Given this evidence, the court finds that Plaintiff has made a specific and documented factual showing that the deposition is likely to be dangerous to her health, unless limited.

Consequently, this court will grant Plaintiff's motion, in part, by requiring that the deposition be taken under certain conditions. Those conditions are as follows: (1) the deposition shall be taken at a neutral site, the jury deliberation room of this court; (2) the deposition shall be scheduled in two-hour segments; (3) the deposition shall be taken in the presence of a magistrate judge who may use discretion to determine, among other things: (a) whether the deposition should be adjourned at any time during the two-hour period, (b) whether the questions are abusive or oppressive; and (c) whether all counsel are conducting themselves pursuant to Rule 2:4:7, "in a temperate, dignified, and responsible manner"; and (4) if further sessions are needed to complete the deposition,

these sessions must also be scheduled in two-hour segments as needed by agreement of counsel, after conferring with the magistrate judge. Additionally, questioning of the Plaintiff should not involve issues regarding potential damages at this time. Such issues should be explored only after further order of court. Furthermore, Plaintiff may not be probed in detail about the nature and cause of her PTSD. However, if Defendants wish to pursue a claim regarding her allegation that Defendant Bookman improperly questioned her regarding her PTSD, Defendants' counsel may ask questions regarding who initiated the alleged conversation about the PTSD, whether she talked about the causes, who was present, and the length of the conversation. If the parties disagree during the course of the examination about the extent to which an area may be explored, the Magistrate shall determine the proper scope of the examination, consistent with the goals and objectives of this Order.

## C. *Limitations Sought Regarding Questioning by Defendants' Counsel*

The seeking of an order precluding Defendants' attorney from questioning Plaintiff is akin to a motion to disqualify counsel. Courts have only granted such motions in limited circumstances, usually as a remedy for a violation of the Code of Professional Responsibility. *See Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio,* 900 F.2d 882, 889 (6th Cir.1990) (involving an alleged conflict of interest). The court also has inherent authority to disqualify counsel for misconduct in open court that substantially impedes the orderly administration of justice, *United States v. Collins,* 920 F.2d 619, 627 (10th Cir.1990), *cert. denied,* 500 U.S. 920, 111 S.Ct. 2022, 114 L.Ed.2d 108 (1991). The court has found no published decision by any court in the Sixth Circuit which has ever removed counsel for reasons other than for disciplinary or ethical reasons. Indeed, not every violation of the Code of Professional Responsibility or all attorney misconduct in open court will justify removal. *See, e.g., Kitchen v. Aristech Chemical,* 769 F.Supp. 254, 257–259 (S.D.Ohio 1991) (finding that lawyer's communication with employee

of opposing party in violation of the Code of Professional Responsibility did not merit disqualification where opposing party did not demonstrate that normal protections under the Federal Rules of Civil Procedure and Federal Rules of Evidence were not sufficient to prevent the information from being admitted at trial). An attorney should be disqualified "only when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred and, in light of the interest underlying the standards of ethics, the social need for ethical practice outweighs the party's right to counsel of his own choice." *United States v. Kitchin,* 592 F.2d 900, 903 (5th Cir.1979) (quoting *Woods v. Covington County Bank,* 537 F.2d 804 (5th Cir.1976)).

 In the present case, Plaintiff has requested the removal of Defendants' counsel because of her medical condition only. Plaintiff has not moved for disqualification or removal because of alleged unethical conduct or for disciplinary reasons. In sum, Plaintiff has failed to provide facts supporting the possibility that a specifically identifiable ethical violation or impropriety occurred. None of the reasons that courts have accepted as a basis for disqualification are present here. While "[a] district court is obliged to consider unethical conduct by an attorney in connection with any proceeding before it," Plaintiff has not alleged any impropriety engaged in by Defendants in this case. *Kitchen,* 769 F.Supp. at 256. Plaintiff only alleges that the sound of counsel's voice and/or his manner are such as to unnerve her and cause her psychological harm. The court does not minimize the conclusion of the psychologist that Plaintiff, if questioned by a male with a loud or harsh voice, may become incapable of speech for a prolonged period of time, have a panic attack, or commit suicide. The court has, however, balanced the serious concerns raised by the psychologist with Defendants' right to retain counsel of their own choosing.

In the final analysis, it is incumbent on Plaintiff, her counsel, and/or her psychologist to determine whether Plaintiff is able to pursue her claims under the conditions laid out here for the protection of her fragile mental health.

## CONCLUSION

For the above stated reasons, Plaintiff's Motion To Limit The Scope Of Oral Examination (Docket No. 20) is granted in part and denied in part.

IT IS SO ORDERED.