**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 05a0001n.06**
**Filed: January 3, 2005**

**No. 03-4172**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| AMBROSE MOSES, III, | ) | |
| | ) | |
|     Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | **ON APPEAL FROM THE UNITED** |
| | ) | **STATES DISTRICT COURT FOR THE** |
| STERLING COMMERCE (AMERICA), | ) | **SOUTHERN DISTRICT OF OHIO** |
| INC., et al., | ) | |
| | ) | |
|     Defendants-Appellees. | ) | |

Before:  MOORE and GIBBONS, Circuit Judges; EDMUNDS, District Judge.[*]

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff-appellant Ambrose Moses, III, proceeding *pro se*, appeals from a judgment dismissing his complaint pursuant to Federal Rule of Civil Procedure 37(b)(2).  Moses filed a complaint against defendants-appellees Sterling Commerce, Incorporated and five members of the company's management.  He alleged that he was terminated because of his race and sex and because he engaged in protected conduct.  The parties consented to have a magistrate judge exercise jurisdiction over the action pursuant to 28 U.S.C. § 636(c).  After almost three years of discovery, the defendants filed a motion to dismiss the case with prejudice based upon Moses's failure to comply with discovery requests and court orders.  The magistrate

---

[*]The Honorable Nancy G. Edmunds, United States District Judge for the Eastern District of Michigan, sitting by designation.

judge granted the defendants' motion. Moses filed a timely appeal. For the following reasons, we affirm the judgment of the lower court.

I.

Moses, an attorney, began working at Sterling Commerce as a Contract Specialist within its Department of Business Administration on December 29, 1996. The company fired him on December 17, 1997, for purported poor performance. Subsequently, Moses filed suit against Sterling Commerce and five of its management-level employees and officers. He alleged that Sterling Commerce discriminated against him on the basis of race and sex and retaliated against him "for seeking to protect [his] civil rights." Further, he alleged violations of 42 U.S.C. §§ 1981 and 1985 and numerous Ohio state law provisions.

The case was assigned to Judge Joseph Kinneary of the Southern District of Ohio. All parties consented to full magistrate judge jurisdiction over further proceedings. Judge Kinneary referred the case to Magistrate Judge Norah McCann King on April 10, 2000.

Discovery began in this case in February 2000. Over the next three years, Moses failed to adequately participate in the discovery process. He did not produce all the documents requested by Sterling Commerce or respond completely to its interrogatories, and he never finished his deposition.[1]

---

[1]Moses appeared for his deposition, but answered only a few questions about his name and address and then terminated the deposition. Sterling Commerce moved to compel Moses's deposition and asked for sanctions. Magistrate Judge King granted the defendants' motion to compel his deposition. However, she declined to impose sanctions on Moses, but noted that "the Court will not hesitate to impose sanctions against plaintiff should he again fail to participate in the discovery process."

*Moses v. Sterling Commerce (America), Inc.*, No. 03-4172

Sterling Commerce attempted to resolve these problems directly with Moses on at least five separate occasions between March 2000 and January 2001. After these communications did not produce the requested information, Sterling Commerce filed two motions to compel discovery. Included in both motions was Sterling Commerce's request for sanctions. On September 24, 2001, Magistrate Judge King ordered Moses to produce certain documents and respond to certain interrogatories within fifteen days. The court also granted Sterling Commerce's request for sanctions, because "[p]laintiff persists in attempting to transform the litigation process into a game." Moses failed to meet the deadline set by this order, telling Magistrate Judge King in a status conference that he had not been able to comply with the order because he had been busy. Magistrate Judge King ordered Moses to produce the requested discovery by the close of business the following day. Thereafter, Moses submitted various documents to Sterling Commerce and responded to two interrogatories. Sterling Commerce did not find these discovery responses to be sufficient. In December 2001, it filed a motion to dismiss Moses's complaint for failure to participate in discovery and asked for sanctions. Magistrate Judge King denied this motion, because "[p]laintiff is, apparently, producing some discovery to defendants and an extension of the expert disclosure and dispositive motion filing dates will minimize the prejudice accruing to defendants by reason of plaintiff's recalcitrance." However, Magistrate Judge King did warn Moses that "failure to strictly comply with this order will result in the dismissal of the action." By 2003, Moses still had not provided all the discovery ordered by the court to be produced.

While the discovery process was ongoing, Moses twice tried to have Sterling Commerce's attorneys disqualified or sanctioned. On the first occasion, Moses filed a motion to disqualify the

- 3 -

attorneys on the ground that the joint representation of the individual and corporate defendants constituted a conflict of interest. The court declined to disqualify the defendants' attorneys, because Moses had not identified any impropriety on the part of these attorneys. Later, Moses requested that Magistrate Judge King refer Sterling Commerce's attorneys for investigation and prosecution of a formal disciplinary proceeding. He argued that the attorneys had violated ethical rules by jointly representing the company and its management-level employees. Magistrate Judge King denied this request and observed that the court previously had rejected this argument.

Moses also tried to have the case removed from Magistrate Judge King's docket. On January 22, 2002, Moses filed two motions, one requesting that the case be referred to a mediation conference and the other asking for the case to be assigned to a district judge. Magistrate Judge King denied these motions. On February 25, 2003, Moses filed a motion with the Chief Judge of the Southern District of Ohio requesting that his case be assigned to a district judge. He argued that the "lack of a district court judge denie[d him] the rights and protections guaranteed to him by the United States Constitution . . . and is also inconsistent with the requirements of 28 U.S.C. § 636(c)" and that he was not receiving "fair, just, and impartial treatment from the magistrate judge." Chief Judge Walter Herbert Rice, while noting that the case was before the magistrate judge by full consent, nonetheless directed the clerk to assign the case to an Article III judge for "the sole and express purpose of ruling on the Plaintiff's Motion to withdraw the reference to the Magistrate Judge." The case was assigned to United States District Judge Edmund Sargus, Jr., who denied Moses's motion and returned the case to Magistrate Judge King. Judge Sargus ruled that there were no "extraordinary circumstances" warranting that the case be removed from Magistrate Judge King's

docket. Rather, he found that Moses's motion appeared to be "motivated by his dissatisfaction with certain rulings, which has led him to make conclusory, unsubstantiated claims of 'conspiracy' on the part of the Magistrate Judge and defense counsel."

After almost three years of receiving inadequate discovery responses, Sterling Commerce moved to dismiss Moses's suit with prejudice. On July 1, 2003, Magistrate Judge King granted Sterling Commerce's motion to dismiss the case, based upon Moses's "continued refusal to fully comply with this Court's discovery orders," the prejudice experienced by the defendants and the "time, money and effort" expended by them, and her conclusion that "a lesser sanction would be ineffectual under the circumstances of this case."

## II.

On appeal, Moses raises a number of issues. He claims that Magistrate Judge King did not have the jurisdiction or authority to preside over this case, especially given that there was no district judge assigned to the case. He also asserts that Chief Judge Rice erred in assigning the case to Judge Sargus to evaluate Moses's motion to vacate the reference and that Judge Sargus erred in denying the motion. Further, Moses argues that Magistrate Judge King abused her discretion in dismissing the case with prejudice for discovery abuses and in refusing to disqualify defense attorneys or to refer misconduct allegations against defense attorneys for investigation. All of these arguments are without merit.

## A.

Moses asserts that Magistrate Judge King did not have the authority to conduct any proceedings when there was no district judge assigned to the case, deny his motion requesting that

*Moses v. Sterling Commerce (America), Inc.*, No. 03-4172

an Article III district judge be assigned to him, or impose sanctions.

The Federal Magistrates Act allows magistrate judges to preside over civil cases. It states in pertinent part: "Upon consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specially designated to exercise such jurisdiction . . . ." 28 U.S.C. § 636(c)(1). This court has considered and rejected challenges to this statute based on the argument that it does not comport with Article III's mandates. *See Norris v. Schotten*, 146 F.3d 314, 325 (6th Cir. 1998); *Bell & Beckwith v. IRS*, 766 F.2d 910, 912 (6th Cir. 1985); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir. 1985).

In this case, it is undisputed that both Moses and Sterling Commerce consented to the reference to a magistrate judge. Moses himself signed a form that stated, "All further proceedings in this action, including trial and entry of a final judgment, may be conducted by a United States Magistrate Judge." Thus, having given his consent to a magistrate judge hearing his case, Moses cannot now contest Magistrate Judge King's authority to impose sanctions, rule on motions, or render a final judgment. The plain language of § 636(c) allows the magistrate judge to "conduct *any or all* proceedings in a jury or nonjury civil matter and order the entry of judgment." (emphasis added). A full referral to a magistrate judge allows the magistrate judge to oversee litigation in the same manner as a district judge would. In fact, a "§ 636(c)(1) referral gives the magistrate judge full authority over dispositive motions, conduct of trial, and entry of final judgment, all without district court review." *Roell v. Withrow*, 538 U.S. 580, 585 (2003). The "magistrate judge may exercise plenary jurisdiction." *Vitols v. Citizens Banking Co.*, 984 F.2d 168, 169 (6th Cir. 1993).

*Moses v. Sterling Commerce (America), Inc.*, No. 03-4172

It was therefore appropriate for Magistrate Judge King to rule on Moses's request to vacate the reference, dismiss his action with prejudice, impose sanctions, and decline to disqualify the defense attorneys. Moses's arguments to the contrary are meritless.

For these same reasons, it was not error that no district judge was assigned to this case after the retirement of Judge Kinneary. By consenting to having his case heard by the magistrate judge, Moses waived his constitutional right to an Article III judge. *See Dixon v. Ylst*, 990 F.2d 478, 479-80 (9th Cir. 1993) ("A party to a federal civil case has, subject to some exceptions, a constitutional right to proceed before an Article III judge. This right can be waived, allowing parties to consent to trial before a magistrate judge.") (citations omitted). Further, as we have observed, "[a]lthough not a 'district judge,' a magistrate judge exercises the same jurisdiction as a district judge where there is a designation pursuant to § 636(c)." *Vitols*, 984 F.2d at 169. Moses's arguments that he was denied constitutional protections and that Magistrate Judge King acted without authority when there was not a district judge assigned to the case are simply incorrect.

Moses also suggests that his consent to the referral was not freely given "because it was heavily influenced and driven by his need for avoiding the endurance of an unreasonable delay with Senior Judge Kinneary." Moses never argued in the lower court that his consent to magistrate judge jurisdiction was not freely given. Thus, Moses has waived his opportunity to contest the voluntariness of his consent, because this court, "subject to limited exceptions, . . . will not consider issues not presented to the district court but raised for the first time on appeal." *Preferred RX, Inc. v. Am. Prescription Plan, Inc.*, 46 F.3d 535, 549 (6th Cir. 1995).

Even if Moses had not waived his right to present this argument, his contention that his

*Moses v. Sterling Commerce (America), Inc.*, No. 03-4172

consent was not freely given is not credible. Waiver of a right to have a case heard by an Article III judge must be evidenced by "voluntary, knowing, and intelligent action." *Norris*, 146 F.3d at 326. Moses took this action when he signed the consent form, which clearly stated that all proceedings would be conducted by a magistrate judge. Further, Moses is a licensed attorney, who likely knew the consequences of signing that document. The fact that Moses believed he could get relief faster under a magistrate judge than with Judge Kinneary does not mean that his consent was given involuntarily. "Access to district judges in the current judicial system is not so restricted that adjudication of cases by magistrates is a compelled alternative." *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 543 (9th Cir. 1984). Moses points to nothing in the record nor does the record reveal any other facts to support his contention that his consent to the magistrate judge referral was anything but freely given.

B.

Next, Moses argues that Chief Judge Rice erred in assigning his motion to vacate the reference to another district judge for the limited purpose of ruling on that motion. This contention is unavailing. As previously discussed, Moses and Sterling Commerce consented to a full referral to a magistrate judge under § 636(c). At that point, the magistrate judge assumed the duties of the district judge and had the authority to rule on "any or all proceedings." 28 U.S.C. § 636(c)(1). The district court thereafter could only entertain motions to vacate the reference to the magistrate judge. *See id.* § 636(c)(4) ("The court may, for good cause shown on its own motion, or under extraordinary circumstances shown by any party, vacate a reference of a civil matter to a magistrate judge under this subsection."); *Manion v. Am. Airlines, Inc.*, 251 F. Supp. 2d 171, 175 (D.D.C. 2003)

- 8 -

*Moses v. Sterling Commerce (America), Inc.*, No. 03-4172

(noting that "the District Court's 'supervisory authority' over actions referred for all purposes to a Magistrate Judge is limited to consideration of motions to vacate the referral").

Further, Judge Sargus, in ruling on this motion, did not err in denying it. A motion to vacate the reference to a magistrate judge should only be granted upon motion of a party if that party shows "extraordinary circumstances." 28 U.S.C. § 636(c)(4). Moses failed to demonstrate extraordinary circumstances. Instead, he attacked the integrity of the proceedings, the authority of the magistrate judge, and stated that the "magistrate judge has shown a prejudice and bias against Moses." These conclusory allegations demonstrate a distaste for how his case was being resolved by the magistrate judge. A motion to vacate the reference cannot stand on these grounds. *See Milhous v. Metro. Gov't of Nashville & Davidson County*, No. 99-5685, 2000 WL 876396, at *1 (6th Cir. June 21, 2000) ("It is equally clear that no 'extraordinary circumstances' were shown here but, rather, the plaintiff simply was displeased with the magistrate's rulings on the motions to dismiss.").

C.

Moses also contests Magistrate Judge King's dismissal of his case. This court reviews the dismissal of an action for failure to cooperate in discovery for an abuse of discretion. *See Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976); *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366 (6th Cir. 1997).

Federal Rule of Civil Procedure 37(b)(2) authorizes a court to dismiss a case when a party has failed to obey an order regarding discovery. This court considers four factors when reviewing the dismissal of a complaint: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's

failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Harmon*, 110 F.3d at 366-67.

The record clearly reflects that Moses's failure to cooperate in discovery was willful. Moses never completed his deposition, although he was ordered to do so by the court. Moses also failed to produce certain documents and answer certain interrogatories despite being ordered to do so several times by Magistrate Judge King. In fact, by 2003, Moses still had not complied with orders issued by the court in September 2001 and September 2002. Moses's refusal to be deposed and his consistent failure to comply with court orders and defense requests to produce discovery materials support the conclusion that his conduct was willful and in bad faith. There was no valid reason for him not to provide the information requested after being ordered to do so by the court.

The second *Harmon* factor is whether the adversary was prejudiced by the party's failure to participate in discovery. Moses's actions likely cost Sterling Commerce both time and money; the defendants had to file two motions to compel and two motions to dismiss based upon Moses's failure to cooperate. Defense attorneys also sent numerous letters trying to obtain this information. Further, Moses failed to respond to discovery requests for almost three years, unnecessarily delaying resolution of the case. As noted by the *Harmon* court in upholding dismissal of a case based on a failure to cooperate in discovery, "Not only had [the company] been unable to secure the information requested, but it was also required to waste time, money, and effort in pursuit of cooperation which [the adversary] was legally obligated to provide." *Harmon*, 110 F.3d at 368. Similarly, Moses's failure to participate in discovery prejudiced Sterling Commerce because, not

only did it never receive the requested discovery, it also had to expend considerable effort in trying to secure his cooperation.

The third *Harmon* factor is whether the party was warned that failure to cooperate could lead to dismissal. In a September 2002 order, Magistrate Judge King specifically stated that "plaintiff is put on notice that his failure to strictly comply with this order will result in the dismissal of the action." Thus, this factor is satisfied.

The final *Harmon* factor is whether less drastic sanctions were imposed or considered. Magistrate Judge King did in fact impose less drastic sanctions in previous orders. First, in 2000, she warned Moses that "any future misconduct will be sanctioned." Next, in 2001, Magistrate Judge King granted defendants' motions for sanctions. In 2002, she warned Moses that his failure to cooperate would result in dismissal of his case. At that time, she denied defendants' motion to dismiss the case for failure to cooperate in discovery. Thus, Magistrate Judge King imposed warnings and monetary sanctions, none of which compelled Moses to participate in discovery, before dismissing his action.

The *Harmon* factors weighed strongly in favor of dismissing Moses's case pursuant to Rule 37(b)(2). Given Moses's willful failure to cooperate over a three-year period, Magistrate Judge King did not abuse her discretion in dismissing his case.

D.

Finally, Moses claims that Magistrate Judge King's failure to disqualify the defense attorneys or refer allegations of misconduct for investigation was error. A district court's refusal to disqualify defense counsel is reviewed for an abuse of discretion. *See Petrovic v. Amoco Oil Co.*,

200 F.3d 1140, 1154 (8th Cir. 1999); *In re Dresser Indus., Inc.*, 972 F.2d 540, 546 (5th Cir. 1992).

Courts must be vigilant in reviewing motions to disqualify counsel as "the ability to deny one's opponent the services of capable counsel[ ] is a potent weapon," *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988), that can be "misused as a technique of harassment." *Kitchen v. Aristech Chem.*, 769 F. Supp. 254, 257 (S.D. Ohio 1991) (citations omitted).

Magistrate Judge King did not abuse her discretion in denying Moses's motion to disqualify defense attorneys or in refusing to follow his suggestion that the defense attorneys be referred for investigation. A court should only disqualify an attorney "when there is 'a reasonable possibility that some specifically identifiable impropriety' actually occurred." *Id.* (quoting *United States v. Kitchin*, 592 F.2d 900, 903 (5th Cir. 1979)). Magistrate Judge King correctly observed that Moses "has neither alleged nor established any impropriety on the part of defense counsel that would warrant disqualification." The record confirms that Moses's assertions of impropriety on the part of defense attorneys were frivolous, and thus Magistrate Judge King did not abuse her discretion in refusing to disqualify Sterling Commerce's attorneys or refer them to disciplinary proceedings.

III.

For the foregoing reasons, we affirm the judgment of the lower court.