Neil YATES, III et al.,

and

Ethan R. Dicks, et al., Plaintiffs,

v.

APPLIED PERFORMANCE
TECHNOLOGIES, INC.,
et al., Defendants.

Nos. C2–01–765, C2–01–999.

United States District Court,
S.D. Ohio,
Eastern Division.

April 26, 2002.

John William Ferron, Ferron & Associates, Columbus, OH, for plaintiffs.

Susan Porter, Schottenstein, Zox & Dunn, Grey Wilbur Jones, Price & Jones, Columbus, OH, for defendants.

## *MEMORANDUM & ORDER*

MARBLEY, District Judge.

In three related lawsuits, Plaintiffs have filed actions seeking to recover overtime pay under the Fair Labor Standards Act ("FLSA") and Ohio Revised Code § 4111.01

*et seq.* Those three lawsuits may be summarized as follows:

(1) *Yates v. Applied Performance Technologies, Inc.*, Case No. C2–01–765 (hereinafter *"Yates"*): A group of seven plaintiffs, all former computer consultants for Applied Performance Technologies, Inc. ("APT"), filed suit on behalf of themselves and a class of others similarly situated, seeking to recover overtime pay to which they claim to be entitled under federal and state law. Defendants include APT, Gregory Huddle, and Courtland Bishop.

(2) *Dicks v. Applied Performance Technologies, Inc.*, Case No. C2–01–999 (hereinafter *"Dicks"*): Plaintiff, a former computer consultant for APT, filed suit on behalf of himself and others similarly situated seeking to recover overtime pay to which he claims to be entitled under the FLSA. Defendants include APT, Gregory Huddle, and Courtland Bishop.

(3) *Yates v. Lucent Technologies, Inc.*, Case No. C2–02–057 (hereinafter *"Lucent"*): The lead plaintiff in *Yates* filed suit against Lucent Technologies on behalf of himself and others similarly situated seeking to recover overtime pay under the FLSA. Lucent Technologies is one of APT's clients. Since APT sent Yates and other computer consultants to work there, Plaintiffs claim that Lucent Technologies is liable as a "joint employer." After the lawsuit was filed, Lucent Technologies filed a third party complaint against APT, Gregory Huddle, Courtland Bishop, and Gregg McConnell, seeking indemnification in the event Lucent Technologies is found liable.

*Dicks* and *Lucent* have recently been consolidated with *Yates* for all further purposes. This matter is currently before the Court on numerous pending motions in *Yates* and *Dicks*. In both cases, Defendants have filed substantially identical motions to dismiss for failure to join an indispensable party (Record at 3 in *Dicks*, Record at 10 in *Yates*). Likewise, in both cases, Defendants have filed identical motions to disqualify Plaintiffs'

counsel (Record at 4 in *Dicks,* Record at 20 in *Yates*). Also pending before the Court in *Yates* is Plaintiffs' motion for leave to serve limited interrogatories and for authority to notify putative class members (Record at 15). The following motions are pending before the Court in *Dicks:* (1) Defendants' motion to strike Plaintiffs' memorandum in opposition to the motion to dismiss or, in the alternative, motion for leave to file a reply brief eleven days after the decision on the motion to strike (Record at 10); (2) Defendants' motion for leave to incorporate their reply brief (concerning the motion to disqualify Plaintiffs' counsel) filed in *Yates* into this action (Record at 11); and (3) Defendants' motion for leave to incorporate their reply brief (concerning the motion to dismiss) filed in *Yates* into this action (Record at 13).

## I. Background

### A. *Yates v. Applied Performance Technologies, Inc., et al.,* Case No. C2–01–765

Applied Performance Technologies, Inc. ("APT") is a computer consulting firm owned by Defendant Gregory Huddle. It places computer specialists with third party customers on a temporary basis. Mr. Huddle is APT's president and sole shareholder. Defendant Courtland Bishop is APT's senior vice president.

Gregg McConnell began working at APT in 1993. In late 1997 or early 1998, he was promoted to vice president. He served in that capacity until he was allegedly forced to resign on January 16, 2001. (McConnell Aff. ¶ 2, Ex. 1 to Pls.' Mem. Opp'n Mot.Summ.J.). Upon his resignation, McConnell began working for Integrity Tek ("IT"), a direct competitor of APT. This fairly new company is run by Jared Hunnell, and also employs Eric Conkle. Mr. Hunnell and Mr. Conkle are also former employees of APT.

The departure of Gregg McConnell and Eric Conkle from APT spurred a flurry of lawsuits. First, APT filed suit against McConnell, seeking to recover payment on certain loans made to McConnell by APT and reimbursement for overpayment of compensation. This suit was settled fairly quickly. Thereafter, on July 15, 2001, APT filed another suit against McConnell, seeking injunctive relief for an alleged breach of McConnell's non-compete agreement with APT. On the same date, APT filed a similar suit against Mr. Conkle. The law firm of Ferron & Associates represented McConnell and Conkle in those actions. Although a magistrate judge denied APT's motion for a preliminary injunction against Mr. Conkle, he granted APT's motion for a preliminary injunction against Mr. McConnell. APT's suit against McConnell is still pending in state court.

*Yates* was filed on August 8, 2001. Plaintiffs Eric Conkle, Kris Walker, John Giusto, and Neil Yates III, who happens to be Gregg McConnell's cousin, filed this suit against APT, Mr. Huddle and Mr. Courtland.[1] On behalf of themselves and others similarly situated, they alleged that APT had failed to pay its computer consultants for overtime as required by both federal and state law. These plaintiffs are also represented by Ferron & Associates.

The Court issued a Memorandum and Order in *Yates* on January 14, 2002. In that Memorandum & Order, the Court: (1) denied as moot Defendants' motion to dismiss the original complaint; (2) denied Plaintiffs' motion for default judgment; (3) denied Defendants' motion to compel acceptance of offers of judgment; (4) agreed to strike from Plaintiffs' memorandum in opposition to the motion to dismiss the First Amended Complaint the exhibits containing the deposition testimony that was subject to a protective order in another case, and gave Defendants eleven days to file a reply brief. The Court reserved ruling on Defendants' motion to dismiss the First Amended Complaint (Record at 10), Defendants' motion to disqualify Plaintiffs' counsel (Record at 20), and Plaintiffs' motion for leave to serve limited interrogatories and for authority to notify putative class members (Record at 15). As noted earlier, these three motions are still pending.

---

1. Plaintiffs later filed a First Amended Complaint, adding three more named plaintiffs— Thomas Hope, Sandra Kay Hicks, and Stacy Groves.

### B. *Dicks v. Applied Performance Technologies, et al.,* Case No. C2–01–999

On October 16, 2001, Ethan Dicks, on behalf of himself and others similarly situated, who performed work for APT as hourly paid consultants, filed suit against APT, Gregory Huddle, and Courtland Bishop. Plaintiffs alleged that Defendants had violated the FLSA by failing to pay overtime wages to which they were lawfully entitled. They requested compensatory and liquidated damages, as well as interest, attorneys' fees and costs. Unlike the *Yates* plaintiffs, they did not assert any additional claims under Ohio law.

As noted earlier, there are five pending motions in *Dicks:* (1) Defendants' motion to dismiss (Record at 3); (2) Defendants' motion to disqualify Plaintiffs' counsel (Record at 4); (3) Defendants' motion to strike Plaintiffs' memorandum in opposition to the motion to dismiss or, in the alternative, motion for leave to file a reply brief eleven days after the decision on the motion to strike (Record at 10); (4) Defendants' motion for leave to incorporate their reply brief (concerning the motion to disqualify Plaintiffs' counsel) filed in *Yates* into this action (Record at 11); and (5) Defendants' motion for leave to incorporate their reply brief (concerning the motion to dismiss) filed in *Yates* into this action (Record at 13).

The Court will first address the motion to strike and the motions for leave to incorporate the reply briefs filed in *Yates* into the *Dicks* case. As noted earlier, the pending motions to dismiss for failure to join an indispensable party, and the accompanying briefs, are substantially identical in both cases and will be consolidated for purposes of this Memorandum & Order. The same is true for the pending motions to disqualify Plaintiffs' counsel. Finally, the Court will address the other motion pending in *Yates,* Plaintiffs' motion for leave to serve limited interrogatories and for authority to notify putative class members.

### II. Motion to Strike Memorandum in Opposition to Motion to Dismiss

■ As they did in *Yates,* Defendants in *Dicks* again object to Plaintiffs' use of the deposition testimony of Janet Dobbins, Courtland Bishop, and Gregory Huddle to support Plaintiffs' memorandum in opposition to Defendants' motion to dismiss. This deposition testimony was subject to an Agreed Protective Order in the related case of *Applied Performance Technologies v. Conkle,* Franklin County Court of Common Pleas, Case No. 01CVH07–6479, and had been designated as confidential. As a sanction, Defendants have asked the Court to strike in its entirety Plaintiffs' memorandum in opposition to the motion to dismiss. In response, Plaintiffs have asserted the same arguments they did when this issue was raised in *Yates.*

For the same reasons set forth in Judge Holschuh's January 14, 2002 Memorandum and Order in *Yates,* the Court will **GRANT IN PART and DENY IN PART** Defendants' motion to strike. The Court will not strike the entire memorandum in opposition to the motion to dismiss. The Court will, however, strike the references to the deposition testimony of Dobbins, Bishop, and Huddle from the memorandum, and will not consider Exhibits 5, 6, or 7 to Plaintiffs' memorandum in opposition to the motion to dismiss.[2]

### III. Motions to Incorporate Briefs Previously Filed in *Yates* into *Dicks*

Because the arguments concerning the pending motions to dismiss and motions to disqualify Plaintiffs' counsel are substantially identical in both cases, Defendants' unopposed motions to incorporate their reply briefs previously filed in *Yates* into the *Dicks* case are **GRANTED.**

### IV. Motions to Dismiss for Failure to Join Indispensable Party

In both *Yates* and *Dicks,* Defendants, pursuant to Federal Rules of Civil Procedure

---

**2.** Defendants' alternative motion for leave to file a reply brief eleven days after the Court issues a decision on the motion to strike was rendered moot when Defendants subsequently filed their motion for leave to incorporate into *Dicks* the reply briefs filed in *Yates* in connection with the motion to dismiss.

12(b)(7) and 19, have filed motions to dismiss for failure to join Gregg McConnell as a necessary and indispensable party.[3] They claim that, as APT's vice president and financial supervisor, McConnell was, by his own admission, responsible for reviewing and approving APT's payroll expenditures, and that he is, therefore, a necessary party who must be joined as a defendant pursuant to Federal Rule of Civil Procedure 19(a). Defendants claim that the only reason McConnell was not named as a defendant in *Yates* or *Dicks* is because he is represented by Plaintiffs' counsel; for Ferron & Associates to sue McConnell would create an obvious conflict of interest.

Federal Rule of Civil Procedure 12(b)(7) permits defendants to raise by motion the defense of failure to join a party under Rule 19. Rule 19 reads, in pertinent part, as follows:

Rule 19. Joinder of Persons Needed for Just Adjudication

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plain-

tiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19.

■ A three-part test is used to determine whether a claim should be dismissed for failure to join a party:

The first step in determining the question of joinder under Rule 19 is whether a person is necessary to the action and should be joined if possible ... If a person is found to meet one of the criteria set forth in 19(a), the person is to be joined if feasible and the issue of whether the court may exercise personal jurisdiction over the person arises. If personal jurisdiction is present, the person shall be joined. However, in the absence of personal jurisdiction, or if venue as to the person is improper, the court must proceed to the third step which involves an analysis under 19(b) to "determine whether in equity and good

---

**3.** The only difference in the arguments made by the parties concerning the motion to dismiss is that in *Yates* Plaintiffs had also argued that the motion to dismiss should be denied because it was untimely filed. According to Plaintiffs, Defendants should have filed an answer or another motion to dismiss within eleven days after the First Amended Complaint was filed. This argu-

ment, however, was rendered moot by this Court's January 14, 2002 Memorandum & Order in which the Court held that, because a motion to dismiss was already pending when the First Amended Complaint was filed and because the First Amended Complaint did not cure the alleged deficiency, Defendants were not required to file a second motion to dismiss.

conscience the action should proceed among the parties before it, or should be dismissed, the absent person thus regarded as indispensable." Fed.R.Civ.P. 19(b). *Soberay Machine & Equipment Co. v. MRF Limited, Inc.,* 181 F.3d 759, 763–64 (6th Cir. 1999). If the Court determines that the person is not "necessary" to the action, no further analysis, and no joinder, is needed. *See Local 670, United Rubber, Cork, Linoleum and Plastic Workers of America v. Int'l Union,* 822 F.2d 613, 618 (6th Cir.1987).

■ Defendants argue that McConnell is necessary to both actions because complete relief cannot be provided without his presence. They contend that Plaintiffs should have named all of APT's principals—Huddle, Bishop, and McConnell—as defendants in these actions. According to Defendants, if Huddle and Bishop are considered "employers" subject to FLSA liability, then McConnell must be also. In support of their motions, they attached only an unauthenticated page of a document they claim is Mr. McConnell's resume. In that document, McConnell allegedly claims that, as the financial supervisor at APT, he "reviewed and approved payroll." (Ex. A to Mot. to Dismiss). After Plaintiffs objected to the unauthenticated nature of the document, Defendants submitted an affidavit of Greg Huddle, in which he attempts to authenticate Mr. McConnell's resume as previously submitted. (Huddle Aff. ¶ 3, Ex. B to Reply Brief). In that affidavit, Huddle further outlines Mr. McConnell's duties at APT, noting that McConnell was responsible for "supervising all aspects of APT's finances, including payroll issues … negotiating salaries and contracts with employees and negotiating contracts, terms and rates with clients," and "determin[ing] com-

pensation for many team members." (*Id.* at ¶ 2).

Notably missing from Mr. Huddle's affidavit is any statement that Mr. McConnell was responsible for the decision to deny APT's computer consultants overtime pay as required by federal and state law. In the Court's view, Huddle's broad, general statements about McConnell's responsibility for "payroll issues" must be compared to McConnell's much more specific testimony that: (1) although McConnell was the financial supervisor and did verify the number of hours the computer consultants worked, he had no authority to determine whether APT would pay the consultants straight time or time and a half for hours in excess of forty per week (McConnell Aff. ¶ 4); (2) although McConnell had broached the subject with Mr. Huddle on numerous occasions, Huddle refused to pay time and a half, clinging to his belief that the consultants were "exempt" employees (*Id.* at ¶¶ 5–7; Conkle Aff. ¶ 6); and (3) Huddle established the overtime policy and designed the software system that automatically calculated the rate of pay for the consultants (McConnell Aff. at ¶¶ 3–4; Conkle Aff. ¶¶ 3–5, Ex. 2 to Mem. Opp'n Mot.Summ.J.).

Plaintiffs also contend that McConnell does not meet the statutory definition of "employer" as defined in 29 U.S.C. § 203(d) and as determined by the "economic reality" test.[4] Therefore, according to Plaintiffs, not only is McConnell not a "necessary" party, but he would not even be a proper defendant.[5] In the Court's view, for purposes of the motions to dismiss, it is completely irrelevant whether Mr. McConnell had responsibility for payroll

---

4. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The "economic reality" test requires courts to consider the facts of each case to determine whether an employment relationship exists. In determining whether a corporate officer is also an "employer," factors to be considered include whether the officer had "operational control over significant aspects of the corporation's day to day functions, including compensation of employees." *Dole v. Elliott Travel & Tours, Inc.,* 942 F.2d 962, 965 (6th Cir.1991).

5. Plaintiffs further argued that, not only is Mr. McConnell not a proper defendant, but he is also a potential plaintiff in the class action suits. In fact, on December 21, 2001, Mr. McConnell filed a separate suit against APT and Huddle, claiming that he was entitled to overtime pay under the FLSA. He contends that he was not an exempt, white collar salaried employee because he was never paid a guaranteed salary. This suit, *McConnell v. Applied Performance Technologies, Inc.,* Case No. C2–01–1273, is currently pending before Judge Holschuh.

issues or whether he can be deemed an "employer" subject to liability under the FLSA.

■ Even if Mr. McConnell were solely responsible for determining whether APT's computer consultants should receive straight pay or time and a half for overtime hours, and even if he could be deemed an "employer" under the FLSA, McConnell is not a necessary party because complete relief can be accorded "among those already parties" to this case. *See Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir.1989). Plaintiffs in both cases seek to recover overtime pay, interest, liquidated damages, attorneys' fees and costs. The FLSA imposes joint and several liability on employers. *See Fegley v. Higgins*, 19 F.3d 1126, 1131 (6th Cir.1994) (corporate officers and the corporation itself are "jointly and severally liable under the FLSA for unpaid wages"). Since Defendants do not argue that APT, Huddle, and Bishop do not fall within the definition of "employers" subject to liability under the FLSA, complete relief is available from those three defendants.

In *Bedel v. Thompson*, 103 F.R.D. 78 (S.D.Ohio 1984), plaintiffs filed suit against the former directors of D.H. Baldwin Co., its accounting firm, and the underwriter of the company's public offering, alleging securities violations. Because the company itself was a debtor in bankruptcy court, the company could not be named as a defendant. The underwriting firm moved to dismiss the complaint for failure to join the company, an allegedly indispensable party. Defendants had argued that if they were found liable, they would have to pursue claims for ·contribution or indemnification against the company in bankruptcy court. The Court rejected the defendants' argument that complete relief could not be accorded among those already parties, noting:

> The "complete relief" provision of Rule 19 relates to those persons already parties and does not concern any subsequent relief via contribution or indemnification for which the absent party might later be responsible ... the "complete relief" re-

quirement concerns the ability of the already included defendants to fully satisfy any judgment awarded to plaintiff. 15 U.S.C. § 77k(a),(f), under which this action is brought, provides for joint and several liability. Because there is several liability any monetary relief found due plaintiffs can ,be completely satisfied without the presence of any other defendant.

*Bedel*, 103 F.R.D. at 80 (internal citations omitted). The Court further noted that "[a] plaintiff is under no requirement to join all parties who might be jointly and severally liable." *Id.* at 81.[6] *See also Intercept Security Corp. v.Code–Alarm, Inc.*, 164 F.R.D. 215, 217–18 (E.D.Mich.1995) (in case of joint and several liability, court denied motion to dismiss for failure to join an indispensable party because complete relief was available from existing defendant).

Based on the above-cited case law, even if Mr. McConnell could be held jointly liable for violations of federal and/or state overtime laws, Defendants have failed to show that complete relief is not available in his absence. Because Defendants have failed to show that Mr. McConnell is a "necessary" party to this action, the Court need not decide whether it has personal jurisdiction over him, or whether McConnell is indispensable. Defendants' motions to dismiss for failure to join an indispensable party are **DENIED**.

## V. Motions to Disqualify Plaintiffs' Counsel

Defendants in both *Yates* and *Dicks* have moved for an order disqualifying Ferron & Associates ("Ferron") as counsel for the putative class members in those two cases because of a conflict of interest with Ferron's other clients—IntegrityTek ("IT"), and former APT employees Gregg McConnell, Eric Conkle, and Jared Hunnell. As noted earlier, Defendants contend that but for the fact that McConnell is one of Ferron's clients, he would have been named as an additional defendant in these cases because he was the APT officer responsible for reviewing and approving payroll. Defendants further con-

---

6. In citing *Bedel*, this Court makes no determination at this time that a right to contribution or indemnification exists under the FLSA. *See Can-*

*jura v. Able Serv. Contractors, Inc.*, 866 F.Supp. 258, 261 (D.Md.1994) (noting a split of authority on this matter).

tend that Ferron is embarking on this course of litigation as part of an "economic vendetta," orchestrated to bring APT to its knees and enhance the business interests of APT's rival, IT. According to Defendants, Ferron is improperly using the class action to leverage the interests of its clients—McConnell, Conkle, Hunnell, and IT—and, in doing so, is acting in a manner contrary to the best interests of the putative class members.

In deciding whether counsel should be disqualified, the Court is required to balance several competing interests.

The power to disqualify an attorney from a case is "incidental to all courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex Parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824) (Marshall, C.J.). However, the ability to deny one's opponent the services of his chosen counsel is a potent weapon. *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir.1988). Confronted with such a motion, courts, must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain counsel of his choice. In order to resolve competing interests, the court must balance the interest of the public in safeguarding the judicial process together with the interests of each party. *General Mill Supply Co. v. SCA Services, Inc.*, 697 F.2d 704, 711 (6th Cir. 1982). "Motions for attorney disqualification 'should be viewed with extreme caution for they can be misused as a technique of harassment.'" *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed.Cir.1984) (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir.1982)), disapproved on other grounds by *Richardson–Merrell, Inc. v. Koller*, 472 U.S. 424, 105 S.Ct. 2757, 86 L.Ed.2d 340 (1985).

*Kitchen v. Aristech Chemical*, 769 F.Supp. 254, 256–57 (S.D.Ohio 1991).

"Confronted with such a motion, courts must be sensitive to the competing public interests of requiring professional conduct by an attorney and of permitting a party to retain the counsel of his choice. In order to resolve these competing interests, the courts must balance the interests of the public in the proper safeguarding of the judicial process together with the interests of each party to the litigation." *Hamrick v. Union Township*, 81 F.Supp.2d 876, 878 (S.D.Ohio 2000) (internal citations omitted); *Nilavar v. Mercy Health System–Western Ohio*, 143 F.Supp.2d 909, 912 (S.D.Ohio 2001).

■ Disqualification of counsel is ordered in one of two situations: "1) where an attorney's conflict of interest undermines the court's confidence in the vigor of an attorney's representation; or 2) where an attorney is at least potentially in a position to use privileged information concerning the opponent gained through prior representation, thus giving his present client an unfair advantage." *Kitchen*, 769 F.Supp. at 257.

■ As the Court noted in *Hamrick*, "[a] motion to disqualify is the proper method for a party-litigant to bring an issue of conflict of interest or the breach of an ethical duty to the court's attention." 81 F.Supp.2d at 878. "The ethical standards by which federal courts measure an attorney's professional conduct are standards defined by federal law." *Kitchen*, 769 F.Supp. at 258. Rule IV of the Model Federal Rules of Disciplinary Enforcement sets forth the standards for professional conduct, adopting the Code of Professional Responsibility for the highest state court in which each district court sits. *See id.*

In considering whether Ferron's representation of the putative class members poses a conflict of interest, this Court must therefore turn to the standards established by the Ohio Code of Professional Responsibility. Defendants contend that Ferron's multiple representation of the putative class members and Mr. McConnell implicates Canon 5 of the Code of Professional Responsibility, which states that "a lawyer should exercise independent professional judgment on behalf of a client." The relevant Ethical Considerations read as follows:

EC 5–1 LOYALTY TO CLIENT

The professional judgment of a lawyer should be exercised, within the bounds of the law, solely for the benefit of his client

and free of compromising influences and loyalties. Neither his personal interests, the interests of other clients, nor the desires of third persons' should be permitted to dilute his loyalty to his client.

EC 5–14 CONFLICTING INTERESTS BETWEEN CLIENTS

Maintaining the independence of professional judgment required of a lawyer precludes his acceptance or continuation of employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client. This problem arises whenever a lawyer is asked to represent two or more clients who may have differing interests, whether such interests be conflicting, inconsistent, diverse, or otherwise discordant.

EC 5–15 ACTUAL AND POTENTIAL DIFFERING INTERESTS

If a lawyer is requested to undertake or to continue representation of multiple clients having potentially differing interests, he must weigh carefully the possibility that his judgment may be impaired or his loyalty divided if he accepts or continues the employment. He should resolve all doubts against the propriety of the representation. A lawyer should never represent in litigation multiple clients with differing interests; and there are few situations in which he would be justified in representing in litigation multiple clients with potentially differing interests. If a lawyer accepted such employment and the interests did become actually differing, he would have to withdraw from employment with likelihood of resulting hardship on the clients; and for this reason it is preferable that he refuse the employment initially. On the other hand, there are many instances in which a lawyer may properly serve multiple clients having potentially differing interests in matters not involving litigation. If the interests vary only slightly, it is generally likely that the lawyer will not be subjected to an adverse influence and that

he can retain his independent judgment on behalf of each client; and if the interests become differing, withdrawal is less likely to have a disruptive effect upon the causes of his clients.

Defendants further contend that Ferron's conduct violates Canon 9 of the Code of Professional Responsibility. It states, "a lawyer should avoid even the appearance of professional impropriety."

■ As noted earlier, when Defendants filed the motions to disqualify Plaintiffs' counsel, Defendants claimed that Ferron should be disqualified because: (1) the firm represents Gregg McConnell, a potential defendant in the class actions, and (2) the firm is improperly using the class actions to leverage the interests of its clients McConnell, Conkle, Hunnell, and IT and, in doing so, is acting in a manner contrary to the best interests of the putative class members. According to Defendants, IT and Ferron's other clients who now work for IT, have interests adverse to Defendants, separate and apart from those of the putative class members. Defendants therefore argue that Ferron cannot represent both the putative classes and the firm's other clients without subordinating the interests of one to the other. The Court agrees.

On April 16, 2002, Defendants filed a supplemental memorandum in support of their motion to disqualify Plaintiffs' counsel. They note that on January 17, 2002, Ferron & Associates, again representing Mr. Yates and a putative class of plaintiffs, filed suit against one of APT's clients, Lucent Technologies, Inc., claiming that Lucent was liable under the FLSA as a "joint employer." [7] As noted earlier, this new case is styled *Yates v. Lucent Technologies*, and has recently been consolidated with *Yates* and *Dicks*. After Plaintiffs filed suit against Lucent, Lucent in turn filed a third party complaint against APT, Gregory Huddle, Courtland Bishop,

---

**7.** Plaintiffs filed suit against Lucent after Defendants failed to produce a list of all of APT's clients over the past nine years, and five years worth of payroll data. Although the FLSA provides for recovery of only two to three years of overtime pay, Plaintiffs contended that the statute of limitations was equitably tolled because APT had failed to post the required FLSA notice at the worksites. Defendants contend that the only reason Plaintiffs wanted information dating so far back was so that they could pass the customer lists on to APT's competitor, IT.

and, most importantly, against Gregg McConnell.

In the Court's view, Lucent's third party complaint, which names Gregg McConnell as a third party defendant, places Ferron in an untenable situation.[8] No counsel has yet entered an appearance on behalf of Mr. McConnell in the *Lucent* case; an answer is due on April 29, 2002. Clearly, Ferron will not be able to enter an appearance on McConnell's behalf. Ferron cannot represent both the plaintiffs and a third party defendant in the same action. However, even assuming that a different attorney will enter an appearance on behalf of Mr. McConnell in the *Lucent* case, the mere fact that McConnell has been named as a third party defendant in that case presents an unavoidable conflict of interest for Ferron.

Ferron has an established attorney-client relationship with McConnell. It currently represents him not only in the state court non-compete suit filed against McConnell by APT, but also in another suit pending before Judge Holschuh—*McConnell v. Applied Performance Technologies*, Case No. C2–01–1273. In light of the fact that Gregg McConnell has now been named as a third party defendant in the *Lucent* case, Ferron's relationship with McConnell severely compromises Ferrons' duty to give undivided loyalty to the classes of plaintiffs in *Yates, Dicks,* and *Lucent,* and to exercise independent professional judgment on their behalf. Ferron's multiple representation also puts the firm in the position of possibly being able to use privileged information gained through its relationship with McConnell for the benefit of the putative class members, and vice versa. Furthermore, the Court joins in Defendants' concern that, at trial, Mr. McConnell is likely to be called as a witness because he was the vice president of APT and the financial supervisor. If McConnell were to testify, this would put Ferron in the awkward position of having to cross-examine its own client.

In this case, the ethical considerations arising from Ferron's representation of Mr. McConnell and the putative classes of plaintiffs in *Yates, Dicks,* and *Lucent* far outweigh the parties' right to counsel of choice. The Court is required to protect not only the interests of the named plaintiffs in these cases, but also the putative class members. The conflicts of interest inherent in Ferron's multiple representation significantly impair Ferron's duty of loyalty to each of its clients and greatly undermine the Court's confidence in the firm's ability to adequately represent the interests of the putative class plaintiffs. Even though Ferron has obviously put considerable time and effort into representing the putative class·members, the Court has no choice but to disqualify Ferron from further representation.[9] Although motions to disqualify are currently pending only in *Yates* and *Dicks,* the Court is, *sua sponte,* also disqualifying Ferron from representing the plaintiffs in *Lucent* for the same reasons.

Although the Court's decision to disqualify Ferron from representing the putative classes of plaintiffs is based on largely on the fact that Lucent has filed a third party complaint naming Gregg McConnell as a third party defendant, the Court will briefly address some of the other grounds for disqualification previously asserted by Defendants. These additional grounds provide further support for the Court's decision to disqualify Ferron.

Defendants speculate that Ferron is seeking to use the FLSA class actions as a tool in an economic or retaliatory campaign against APT. Defendants argue that, in doing so, Ferron is seeking to further the interests of

---

8. The Court is somewhat disheartened that Ferron did not voluntarily withdraw as counsel for the putative classes in *Yates, Dicks,* and *Lucent* as soon as that third party complaint was filed.

9. A decision to disqualify counsel may be made only after a factual inquiry conducted in a manner which would permit appellate review. However, an evidentiary hearing is not always needed. Courts may rely on sworn affidavits and other evidence in the record, but may not decide disputed issues of fact. *See General Mill Supply Co. v. SCA Serv., Inc.,* 697 F.2d 704, 710 (6th Cir.1982). The Court finds no need to conduct an evidentiary hearing prior to making the decision to disqualify Ferron in these cases. There are no disputed factual issues. In the *Lucent* case, the record is clear that: (1) Ferron is currently representing the putative class of plaintiffs; and (2) Gregg McConnell, one of Ferron's other clients, has recently been named as a third party defendant.

IT and its other clients rather than acting in the best interests of the putative class members. Defendants set forth several grounds for this belief. These grounds are based, in large part, on the fact that Ferron has consistently rejected APT's offers to settle the cases.

Shortly after *Yates* was filed, Defendants made offers of judgment to each of the named plaintiffs. These offers included all that was available under the FLSA—double the actual amount of overtime due, plus reasonable attorney fees. Ferron rejected the offer. When Plaintiffs amended the complaint, adding three more plaintiffs, Defendants again offered a similar settlement to the newly named parties. Again, the offer was refused. Defendants later filed a motion to compel acceptance of the offers of judgment. In response, Plaintiffs noted that Defendants' offers were based on Defendants' own calculations of the number of hours each of the consultants had worked. Based on these calculations, Defendants had offered all that was available under the FLSA. However, Plaintiffs did not necessarily agree with Defendants' time records, and Defendants refused to provide any supporting documentation. Plaintiffs also noted that the offers did not include any provision for the other class members who were not named plaintiffs.[10] Finding some merit in Plaintiffs' proffered reasons for rejecting the offers, this Court, in its January 14, 2002 Memorandum & Order, denied Defendants' motion to compel acceptance of the offers of judgment.

Defendants, however, contend that Plaintiffs' refusal to accept the offers of judgment is based on an ulterior motive—Ferron's other clients, IT, McConnell, Conkle, and Hunnell, want to ruin APT. Defendants claim that the only possible reason Plaintiffs sued Lucent, one of APT's clients, was to damage APT's reputation; since APT had already offered to compensate Plaintiffs in full, filing suit against Lucent served no useful purpose. The Court agrees that Ferron's actions arouse some suspicion and tend to support Defendants' "economic vendetta" theory.

The Court is also troubled by other allegations raised by Defendants. For example, Defendants contend that Ferron has conditioned class settlement on a non-class issue, the dismissal of APT's non-compete suit against Mr. McConnell in state court. Defendants note that one week after the initial complaint was filed, while the parties were attempting to facilitate an early settlement, Mr. Ferron sent a letter to APT's counsel stating that Mr. Conkle would not consider settling the FLSA action unless APT also agreed to drop its suits against him and Mr. McConnell. (Ex. D to Mot. to Disqualify).

The Court finds that disqualification is necessary in order to preserve the integrity of the judicial process in these actions. Because of its ongoing attorney-client relationship with Gregg McConnell, who has recently been named as a third party defendant in *Lucent*, Ferron cannot zealously represent the interests of the putative class members in *Yates, Dicks,* or *Lucent.* In addition, even though APT has made full offers of settlement to the named plaintiffs in both *Yates* and *Dicks,* Ferron has rejected these offers, choosing instead to sue one of APT's clients and to condition class settlement on the dismissal of APT's suit against Mr. McConnell. This conduct appears to be contrary to what would be in the best interests of the class members and provides further grounds for disqualifying Ferron from representing the plaintiffs in *Yates, Dicks,* and *Lucent.* For these reasons, the Court **GRANTS** Defendants' motions to disqualify Plaintiffs' counsel.

## VI. Motion for Leave to Serve Limited Interrogatories and for Authority to Notify Putative Class Members

Plaintiffs in *Yates* have also filed a motion for leave to serve limited interrogatories and for authority to notify putative class members. The Court previously reserved ruling on this motion until it ruled on the other pending motions. In light of this Court's decision to disqualify Plaintiffs' counsel, Plaintiffs' motion is **DENIED WITHOUT**

---

**10.** Defendants contend that the entire amount of unpaid overtime owed to all other prospective class members totals less than $4000.00.

PREJUDICE to being refiled once new counsel enters an appearance on behalf of the putative classes.

## VII. Conclusion

For the reasons stated above, in *Dicks v. Applied Performance Technologies, Inc.*, Case No. C2–01–999, Defendants' motion to strike Plaintiffs' memorandum in opposition to the motion to dismiss (Record at 10) is **GRANTED IN PART and DENIED IN PART.** The Court will not consider any of the deposition testimony of Janet Dobbins, Courtland Bishop, or Gregory Huddle because such testimony is the subject of an Agreed Protective Order in a related case. Defendants' alternative motion for leave to file a reply brief eleven days after the decision concerning that motion to strike (Record at 10) is **DENIED AS MOOT.** Defendants' unopposed motions for leave to incorporate briefs filed in *Yates* into this action (Record at 11 and 13) are **GRANTED.**

Since the Court finds that Gregg McConnell is not a necessary party to either action, Defendants' motions to dismiss for failure to join an indispensable party (Record at 10 in *Yates* and Record at 3 in *Dicks*) are **DENIED.** The Court further finds that Plaintiffs' counsel in *Yates, Dicks,* and *Lucent* has a conflict of interest which renders the firm incapable of adequately representing the interests of the putative class members. Defendants' motions to disqualify Plaintiffs' counsel (Record at 20 in *Yates* and Record at 4 in *Dicks*) are therefore **GRANTED.** The Court, *sua sponte*, is also disqualifying Plaintiffs' counsel from continuing to represent the plaintiffs in *Lucent.* In light of this ruling, Plaintiffs' motion for leave to serve limited interrogatories and for authority to notify putative class members (Record at 15 in *Yates*) is **DENIED WITHOUT PREJUDICE** to being refiled once new counsel has entered an appearance on behalf of the putative classes.

**IT IS SO ORDERED.**